**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| JAY HADLEY and LINDA HADLEY,<br>on behalf of themselves and all others<br>similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>CHRYSLER GROUP LLC,<br>TRW AUTOMOTIVE HOLDINGS CORP. and<br>KEMET CORPORATION,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No.

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Jay and Linda Hadley ("Plaintiffs"), by and through undersigned counsel, hereby file this Class Action Complaint against Chrysler Group LLC ("Chrysler"), TRW Automotive Holdings Corp. ("TRW") and Kemet Corporation ("Kemet") (collectively, "Defendants"). The allegations concerning Plaintiffs are based upon personal knowledge, and the allegations concerning other matters alleged herein are based on the investigation of counsel and information and belief. For their complaint, Plaintiffs allege the following:

## I.   NATURE OF ACTION.

1.    Plaintiffs bring this class action on behalf of the following Class:

All persons and entities in Louisiana that own a Model Year 2002-2003 Jeep Liberty or Model Year 2002-2004 Jeep Grand Cherokee or Model Year 2003-2004 Dodge Viper ("Class Vehicles") manufactured with an airbag system occupant restraint control module (the "Class"). Excluded from the Class are any individuals or entities who suffered personal injury as a result of a defect in the airbags, side curtain airbags and seatbelt restraints. Also excluded from the Class are Defendants and their officers, directors and subsidiaries.

The Class Vehicles contain defective airbag system occupant restraint control modules (the "Defect'). The Defect causes inadvertent airbag deployment of the front airbag (for Liberty and

Grand Cherokee models) or the side airbag curtains (for Grand Cherokee models) under normal use. Chrysler has blamed the Defect on TRW, which manufactured the occupant restraint control modules, and Kemet, which manufactured the occupant restraint control module squibs and components. In particular, Chrysler has stated that the occupant constraint control modules were manufactured with inferior and defective components that cause electronic overstress to the computer chips within the modules and, in turn, inadvertent airbag deployment.

2.      Class members are at substantial risk that the Defect will unexpectedly manifest itself when they are driving under normal operating conditions when, without notice, the front or side airbag deploys. The safety risks that inadvertent airbag deployment poses to Class members and nearby pedestrians and vehicle occupants are obvious and numerous.

3.      In or around January 2013, Chrysler directed a written communication (the "Defect Notice") to all Class members. In it, Chrysler acknowledged to Class members, for the first time, the existence of the Defect. Prior to sending this Notice, Chrysler failed to disclose the existence of the Defect, and Plaintiffs and the Class had no reason to know of its existence. In the Defect Notice, Chrysler acknowledged that the occupant restraint control modules for the Class Vehicles were designed, manufactured or assembled with components that could cause electrical overstress, which would damage one of the occupant restraint control module's computer chips, which in turn could cause inadvertent airbag deployment.

4.      Through its Defect Notice, Chrysler promised and obligated itself to repair all Class Vehicles free of charge by providing replacement occupant restraint control components. Chrysler promised Plaintiffs and the Class that they would receive notification of when to take their Class Vehicles to Chrysler dealerships for repair or replacement of these components. Since then, Chrysler has failed to provide and perform the promised repairs.

2

5.      When Plaintiffs and Class members have contacted Chrysler to obtain the promised repairs and replacements, Chrysler has uniformly responded by advising that it has been unable to locate a supplier or replacement parts and that there is no definitive timeline for the promised repair. Chrysler has not offered any alternatives that would enable Class members to drive safely.

6.      By this action, Plaintiffs, on behalf of themselves and the Class, seek: damages arising from Chrysler's breach of its obligations and duties to remedy the Defect as soon as possible, as promised in its Defect Notice (Counts I and II); damages arising from TRW's manufacturing occupant restraint control modules that contain the redhibitory Defect (Count III); damages arising from Kemet's manufacturing of squibs and occupant restraint control module components that contain the redhibitory Defect (Count IV); a declaratory judgment against Chrysler declaring Chrysler's obligations to the Class (Count V); and an injunction requiring Chrysler to remedy the Defect and provide other relief to the Class (Count VI).

## II.     PARTIES.

7.      Plaintiffs Jay and Linda Hadley reside and are domiciled in Baton Rouge, Louisiana.  In September 2002, Plaintiffs leased a new Class Vehicle (2003 Jeep Grand Cherokee, VIN ending in 3C539499), which they subsequently purchased outright, from A.K. Durnin Chrysler-Jeep, a dealership that is no longer in business. In or around February 2013, Plaintiffs received Chrysler's Defect Notice in which Chrysler promised and obligated itself to repair their Class Vehicle. On repeated occasions, in or around April, May and June 2013, Plaintiffs contacted Chrysler by telephone requesting that their air bag system be replaced or repaired.  In response, Chrysler advised Plaintiffs that the parts needed to perform the repairs were not available. Beginning in May 2013, Plaintiffs received from Chrysler three emails

3

continuing to advise them that that replacement parts were not yet available. On or around July 25, 2013, Plaintiffs' airbag light illuminated, which is a precursor to inadvertent airbag deployment. Plaintiffs contacted their local Jeep dealership, Brian Harris Chrysler-Jeep in Baton Rouge. The dealership informed them that it could not remedy the Defect because Chrysler had not provided replacement parts.

8.     Chrysler Group LLC ("Chrysler") is a Delaware corporation with its principle place of business at 1000 Chrysler Drive, Auburn Hills, Michigan. In January 2013, Chrysler promised the Class that it would repair the defective airbag systems in the Class Vehicles. As alleged in paragraphs 34-38 below, Chrysler is the entity that acquired the assets of "Old Chrysler" through a Bankruptcy Court Sale Order on June 10, 2009 ("Sale Order"). The claims of Plaintiffs and the Class asserted herein against Chrysler arise from its own acts which occurred after the Sale Order, and none of the claims is barred by the Sale Order.

9.     TRW Automotive Holdings Corp. is a Delaware corporation with its principal place of business at 12001 Tech Center Drive, Livonia, Michigan. TRW manufactured the airbag occupant restraint control modules in the Class Vehicles.

10.    Kemet Corporation is a Delaware corporation with its principal place of business at 2835 Kemet Way, Simpsonville, South Carolina. Kemet manufactured the squibs and other component that TRW used in the airbag occupant restraint control modules in the Class Vehicles. TRW and Chrysler have stated that these squibs are defective.

## III.    JURISDICTION AND VENUE.

11.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. 1332(d)(2) and the Class Action Fairness Act. Diversity of jurisdiction exists between at

least one member of the Class and Chrysler, the amount in controversy exceeds five million dollars ($5,000,000), and there are more than 100 members of the Class.

12.     This Court has personal jurisdiction over each of the Defendants. Chrysler and Kemet have their principal places of business in this District, and have received substantial revenue and profits in this District. Kemet has conducted substantial business in this District, including supplying TRW with components for the airbag occupant restraint control modules in the Class Vehicles.

13.     Venue in this District is proper under 28 U.S.C. § 1391 because a substantial part of events or omissions giving rise to the Class's claims occurred in this District. The conduct of Chrysler and TRW described herein emanated from their headquarters in this District.   The conduct of Kemet described herein took place in substantial part in this District.

**IV.     OPERATIVE FACTS.**

14.     There are at least 775,000 Class Vehicles in the United States. There are tens of thousands of Class Vehicles in Louisiana.

15.     The Jeep Liberty Class Vehicles were manufactured from January 9, 2001 through March 28, 2003. The Jeep Grand Cherokee Class Vehicles were manufactured from February 13, 2001 through May 23, 2003. The Dodge Viper Class Vehicles were manufactured from January 9, 2001 through June 30, 2004.

16.     Although the Class Vehicles are from older model years, they still have significant useful life.

17.     The occupant restraint control modules used for the airbag systems in the Class Vehicles were manufactured with a defective design and/or materials. Chrysler has stated that the Defect is the result of TRW's occupant restraint control modules, which were made with

5

defective squib capacitors manufactured by Kemet. According to Chrysler, the squib capacitors were made with an inferior metal that degrades over time and during a Class Vehicle's expected useful life. This degradation, in turn, causes inadvertent airbag deployment. In particular, the defective squibs cause electronic overstress. The electronic overstress causes damage to the computer chip located in the occupant restraint control module. The damaged computer chip causes inadvertent airbag deployment.

18.     When Chrysler learned of the Defect, it knew or should have known that the Defect could be remedied by replacing the defective components with non defective components and/or by installing an integrated squib circuit electrical filter and/or an in-line jumper harness with an in-line noise filter; and/or by employing alternative occupant restraint control module electrical architecture that would prevent inadvertent airbag deployment. Despite reports of inadvertent airbag deployment, which continue to this day, Chrysler has not remedied the Defect.

19.     Kemet and TRW knew or should have known of the Defect at the time of manufacture. Chrysler has stated that TRW has informed it that the Kemet-manufactured squibs were made with inferior metals that degrade over time. As a result of an increase in prices for precious metals, including Palladium, TRW and/or Kemet changed the material composition of the squibs in the occupant restraint control modules to base metals. These inferior metals degrade over time, result in electronic overstress in the occupant restraint control module computer chips, which in turn leads to inadvertent airbag deployment.

20.     Plaintiffs and Class members purchased their Class Vehicles because they were not aware of the Defect and on the objectively reasonable assumption that the airbags in the Class Vehicles would not inadvertently deploy during the vehicles' useful life. Plaintiffs and the Class would have paid substantially less for the Class Vehicles or may not have purchased them

at all had they known of the existence of the Defect or the possibility of inadvertent airbag deployment.

21.    Airbags systems are a critical safety feature in the Class Vehicles.  The owners' manuals for the Class Vehicles state

**OCCUPANT RESTRAINTS**
Some of the most important safety features in your vehicle are the restraint systems. These include the front and rear seatbelts for the driver and all passengers, front airbags for both the driver and right front passenger, and, if equipped, window bags for the driver and passengers seated next to a window.

*See*, *e.g.*, 2004 Jeep Grand Cherokee Owners' Manual, p. 26.

22.    The Airbag System consists of the following components:

**Airbag System Components**
The airbag system consists of the following:

- Airbag Control Module (ACM)
- Airbag Warning Light
- Driver Airbag
- Passenger Airbag
- Window Bags above Side Windows (If Equipped)
- Side Impact Sensors (If Equipped)
- Steering Wheel and Column
- Instrument Panel
- Crash Sensor
- Interconnecting Wiring
- Knee Impact Bolsters

*See*, *e.g.*, 2004 Jeep Grand Cherokee Owners' Manual, p.26.

23.    As alleged above, the airbag control modules (or occupant restraint control modules) in the Class Vehicles were defectively designed or manufactured. In particular, electronic components were designed or manufactured in a manner that causes electronic

overstress. The electronic overstress causes damage to the computer chip located in the airbag control module. The damaged computer chip causes inadvertent airbag deployment.

24.     Given the location of the airbags, sudden and unexpected deployment will cause injury to the drivers and passengers of Class Vehicles. The driver's front airbag is mounted in the steering wheel, and the passenger side airbag is mounted in the instrument panel, above the glove compartment:



*See*, *e.g.*, 2004 Jeep Grand Cherokee Owners' Manual, p. 35. Given these locations, unexpected deployment of the front airbags is likely to cause serious disruption and injury to the driver and passengers.

25.     The side airbags or "window bags" are located above the side windows:



8

*See*, *e.g.*, 2004 Jeep Grand Cherokee Owners' Manual, p. 39. Given these locations, unexpected deployment of the side air curtains is likely to cause serious disruption and injury to the driver and passengers.

26.    Chrysler's  Defect Notice stated, in pertinent part, as follows:

Chrysler has decided that a defect, which relates to motor vehicle safety, exists in some 2002 and 2003 model year Jeep® Liberty vehicles and 2002 through 2004 model year Jeep® Grand Cherokee vehicles.

*The problem is...* The Occupant Restraint Control (ORC) module installed in your vehicle (VIN: xxxxxxxxxxxxxxxx) has a small chance of experiencing an electrical overstress condition. Should this overstress condition occur, it could damage one of the ORC's computer chips. A damaged computer chip could cause the airbag light to illuminate, followed almost immediately by an inadvertent deployment of the front airbags (Liberty and Grand Cherokee) or side airbag curtains (Grand Cherokee only). Inadvertent deployment of the airbags may increase the risk of injury and the possibility of a vehicle crash.

*What Chrysler is doing...*[] Chrysler intends to repair your vehicle free of charge (parts and labor). Unfortunately, the parts required to provide a permanent remedy for this condition are currently not available. Chrysler is making every effort to obtain these parts as quickly as possible. Chrysler will contact you again by mail, with a follow-up recall notice, when the remedy parts are available.

NOTE: The AIRBAG warning light will go on for a few seconds after you start your vehicle and then it goes out. This is part of the self-test diagnostics of the airbag system and indicates the airbag system is functioning properly. No action on your part is required for this condition.

*What you must do to ensure your safety...* Once you receive your follow-up recall notice in the mail, simply contact your Chrysler, Jeep or Dodge dealer right away to schedule a service appointment. Ask the dealer to hold the parts for your vehicle or to order them before your appointment.

*If you need help...* If you have questions or concerns which your dealer is unable to resolve, please contact the Chrysler Group Recall Assistance Center at 1-800-853-1403.

*See* Defect Notice (bolding and underlining in original omitted; underlining added above for emphasis).

27.    Through the Defect Notice, Chrysler:

9

      a.     Acknowledged the existence of the Defect in all Class Vehicles ("Chrysler has decided that a defect, which relates to motor vehicle safety, exists in some 2002 and 2003 model year Jeep® Liberty vehicles and 2002 through 2004 model year Jeep® Grand Cherokee vehicles.");

      b.     Acknowledged that the Defect creates a safety risk (the Defect "relates to motor vehicle safety" and advices Class Members to have the Defect repaired "to ensure your safety").

      b.     Promised to repair or remedy the Defect free of charge ("Chrysler intends to repair your vehicle free of charge (parts and labor)."); and

      d.     Promised to make every effort to locate and make available to Class Members the replacement parts as quickly as possible ("Chrysler is making every effort to obtain these parts as quickly as possible.").

28.     Plaintiffs contacted Chrysler by telephone shortly after receiving the Defect Notice and several times thereafter during the period February 2013 through June 2013. During each call, Chrysler informed Plaintiffs that the parts necessary to remedy the Defect were not yet available. Beginning in or around May 2013, Chrysler sent the following boilerplate email to Plaintiffs on at least three occasions:

> Thank you for your patience while waiting for the part to become available for the M35 Airbag System Occupant Restraint Control Module recall. We wanted to let you know that Chrysler is working on getting this part as soon as possible. As soon as the part is available, we will be back in touch with you, so we can work with the Parts Expediting department to get the part to the dealer you have selected to complete the recall. Thank you again for your patience. Some facts that may be helpful to know: Currently, there have been no reported accidents associated with inadvertent airbag deployment. Vehicles linked to inadvertent deployments account for less than three one-hundredths of one percent (0.03 percent) of all vehicles subject to the recall. Sincerely, Chrysler Customer Assistance.

29.     The statement that "there have been no reported accidents associated with inadvertent airbag deployment" is false. There have been at least 215 inadvertent airbag deployments and at least 148 individuals injured as a result of the defect. In addition, the language regarding the low percentage of vehicles suffering inadvertent airbag deployment is misleading. All Class Vehicles were designed, manufactured and assembled in a uniform manner, and all face a substantial risk of inadvertent airbag deployment.

30.     Chrysler's stated basis for not providing a reasonably timely remedy is that it has been unable to locate a supplier to manufacture replacement parts. However, Kemet and TRW, both of whom Chrysler has blamed for the Defect, are going concerns and operational businesses. Moreover, a period of eight months has elapsed since Chrysler obligated itself to fix the Class Vehicles.

31.     On or about July 25, 2013, the airbag light in Plaintiffs' Class Vehicle illuminated. Consistent with the Defect Notice, Plaintiffs became concerned that this signaled a likely inadvertent airbag deployment. *See* Defect Notice ("A damaged computer chip could cause the airbag light to illuminate, followed almost immediately by an inadvertent deployment of the front airbags (Liberty and Grand Cherokee) or side airbag curtains (Grand Cherokee only).").

32.     In response, Plaintiffs immediately contacted an authorized Chrysler dealership. The dealership informed Plaintiffs that no replacement parts had been provided by Chrysler, and that it would be unable to remedy the Defect. The dealership also informed Plaintiffs that if they brought their Class Vehicle in, it would just sit there pending receipt of the replacement parts from Chrysler, and further that the dealership had other Class Vehicles sitting on its lot, awaiting replacement parts.

33.     Since the Defect Notice, and despite Chrysler's claim of a small percentage of vehicles affected by the Defect, many additional Class Vehicles have suffered inadvertent airbag deployment. Some of these are reported on the NHTSA website, www.safecar.gov, and a few examples are summarized below.

| Year and Model | Incident Date | Key text (ALL CAPS in original, bold added) |
|---|---|---|
| '02 Liberty | 01/15/2013 | TL* THE CONTACT OWNS A 2002 JEEP LIBERTY. THE CONTACT STATED THAT **WHILE DRIVING 35 MPH, THE AIR BAG WARNING LAMP ILLUMINATED. WITHIN SECONDS, THE AIR BAG INADVERTENTLY DEPLOYED.** THE CONTACT WAS KNOCKED UNCONSCIOUS WITH HIS FOOT REMAINING ON THE ACCELERATOR PEDAL. AS A RESULT, THE VEHICLE CONTINUED TO TRAVEL AT A SPEED OF 60 MPH, CAUSING HIM TO CRASH INTO A TREE. THE CONTACT WAS THROWN FROM THE WINDSHIELD AND SUSTAINED MULTIPLE LACERATIONS AND BRUISING. A POLICE REPORT WAS FILED. THE VEHICLE WAS TAKEN TO A LOCAL MECHANIC. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE AND VERIFIED THAT THE VEHICLE WAS INCLUDED IN NHTSA CAMPAIGN ID NUMBER: 12V527000 (AIR BAGS: FRONTAL: SENSOR/CONTROL MODULE). THE VEHICLE WAS UNDER INVESTIGATION BY THE MANUFACTURER. THE VEHICLE WAS DESTROYED. THE FAILURE AND CURRENT MILEAGE WAS 160,000. |
| '02 Liberty | 03/01/2013 | SUBMISSION FROM LCDO. RE SAFETY RECALL M35/NHTSA 12 V-527 AIRBAG SYSTEM OCCUPANT RESTRAINT CONTROL MODULE. *TGW THE CONSUMER RECEIVED A SAFETY RECALL NOTICE SEVERAL WEEKS AGO. HOWEVER, THE NOTICE STATED THE PARTS REQUIRED TO PROVIDE A PERMANENT REMEDY, WERE CURRENTLY NOT AVAILABLE. THE NOTICE STATED, THE CONSUMER WOULD BE CONTACTED BY MAIL, WITH A FOLLOW-UP NOTICE, WHEN THE PARTS ARRIVED. THE CONSUMER DECIDED TO CONTACT THE DEALER, AFTER NOT RECEIVING A FOLLOW-UP NOTICE, TO HAVE THE VEHICLE INSPECTED ANYWAY. THE SERVICE APPOINTMENT WAS SCHEDULED FOR MARCH 4, 2013. HOWEVER, ON MARCH 1, 2013, **WHILE DRIVING, THE PASSENGER AIR BAG INADVERTENTLY DEPLOYED** WITH A VERY LOUD NOISE, WHICH CAUSED HIM TO CRASH INTO ANOTHER VEHICLE. THE CONSUMER |

| | | |
|---|---|---|
| | | STATED THE DRIVER'S SIDE AIR BAG NEVER DEPLOYED. THE CONSUMER STATED NO ON CAME TO INSPECT THE VEHICLE, AND HE STILL HAD NOT RECEIVED THE FOLLOW-UP NOTICE. |
| '02 Grand Cherokee | 03/06/13 | 2002 JEEP GRAND CHEROKEE. CONSUMER WRITES IN REGARDS TO OCCUPANT RESTRAINT CONTROL MODULE RECALL NOTICE. *SMD THE CONSUMER STATED THE WAS AN ELECTRICAL SOUND COMING FROM THE DASHBOARD AREA IN THE VEHICLE. THE DEALER WANTED TO CHARGE THE CONSUMER $195 DIAGNOSTIC FEE. THE CONSUMER STATED NO ONE AT THE DEALER WANTED TO ASSIST HIM AND OPEN THE CASE NUMBER. ON MARCH 6, 2013, **WHILE DRIVING, THE AIR BAGS INADVERTENTLY DEPLOYED.** THE CONSUMER BLACKED OUT FOR A SECOND OR TWO, AND WAS HIT ON THE RIGHT REAR PASSENGER SIDE BUMPER. THE VEHICLE THEN SLID FORWARD AS HE TRIED TO AVOID HITTING THE LEFT SIDEWALL OF THE BRIDGE, IN WHICH THE VEHICLE WENT INTO A SPIN SIDE WAYS. |
| '03 Liberty | 04/11/2013 | I WAS PASSENGER, **MY HUSBAND [XXX] WAS DRIVING. AIRBAG LIGHT CAME ON AND CHIMED FOR A COUPLE OF SECONDS, THEN SUDDENLY THE DRIVER'S SIDE AIRBAG DEPLOYED,** BRUISING [XXX]' ARM AND HURTING HIS NECK AND SHOULDER. MORE THAN A WEEK LATER, I STILL CANNOT GET ANYONE FROM CHRYSLER/JEEP TO TELL ME WHAT IS GOING ON. THEY FINALLY HAD AN INSPECTOR LOOK AT IT TODAY, BUT HE SAID IT COULD BE 10-12 DAYS BEFORE I GET A RESPONSE. I KEEP FOLLOWING UP WITH CHRYSLER BY PHONE, BUT THEY WILL NOT TELL ME ANYTHING OTHER THAN THAT THEY ARE INVESTIGATING IT. THEY DID TELL ME NOT TO DRIVE THE VEHICLE, LEAVING US WITH NO VEHICLE AND NO RENTAL OR ANY TYPE OF RESOLVE HAS BEEN OFFERED. INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6).*TR |
| '02 Grand Cherokee | 06/04/2013 | **AIRBAGS INADVERTENTLY DEPLOYED.** |
| '03 Grand Cherokee | 06/24/13 | **I WAS DRIVING DOWN THE ROAD WHEN BOTH OF MY AIRBAGS DEPLOYED.** CHRYSLER AFTER TWO WEEKS OF TOYING WITH ME OFFERED TO 1 TOTAL MY CAR AND PAY ME KELLY BLUE BOOK VALUE OR 2 GIVE ME 1,000 DOLLARS AND WAIT UNTIL PARTS CAME IN. THEY TOLD ME HOWEVER THEY DID NOT KNOW WHEN PARTS WOULD BE AVAILABLE IN THE US AND THAT THEY WERE |

| | | |
|---|---|---|
| | | NOT GOING TO PAY FOR THE INSIDE DAMAGE CREATED BY THE AIRBAGS DEPLOYING. I HAVE TWO FAMILY MEMBERS WHO DRIVE VEHICLES IN WHICH THIS RECALL APPLIES TO. I WOULD NEVER RECOMMEND TO ANYONE THAT THEY SHOULD PURCHASE A VEHICLE FROM CHRYSLER. THEY DO NOT HELP AT ALL EVEN WHEN THEY KNOW IT IS THEIR FAULT. THEY ARE AWARE OF THIS ISSUE AND ARE DOING NOTHING TO THE 700,000 PLUS PEOPLE DRIVING THESE VEHICLES. THANK GOODNESS I WASN'T SERIOUSLY INJURED BUT WHAT IF NEXT TIME IT DOES SERIOUSLY HURT A DRIVER. |
| '03 Liberty | 06/27/2013 | ON JUNE 27 2013, MY FAMILY AND I WERE GOING TO DINNER APPROXIMATELY 6PM. WE WERE ABOUT 1.5 MILES FROM HOME HEADING WEST ON OK STATE HWY 51 (APPROXIMATELY 5 MILES EAST OF WAGONER, OK) **AS I GOT TO APPROXIMATELY 60 MPH THE DASHBOARD AIRBAG WARNING LIGHT FLASHED AND DINGED TWICE THEN THE AIRBAG DEPLOYED.** I MAINTAINED CONTROL OF THE VEHICLE AND ONLY SUFFERED AN ABRASION AND BRUISE ON THE UNDERSIDE OF MY RIGHT FOREARM FROM THE BAG DEPLOYMENT. I IMMEDIATELY CAME HOME AND CONTACTED THE CHRYSLER RECALL HOTLINE NUMBER AND HAVE BEEN ASSIGNED A CASE NUMBER AND I WAS NOTIFIED TODAY (7/1/2013) THAT AN INVESTIGATOR WILL BE IN CONTACT WITH ME WITHIN 24 HRS. |

## V.    THE CLASS'S CLAIMS DO NOT INVOLVE CLAIMS BARRED BY THE PRIOR CHRYSLER BANKRUPTCY.

34.    None of the claims by Plaintiffs or the Class asserted herein are barred by the June 10, 2009 Bankruptcy Court Sale Order ("Sale Order") through which Chrysler (the defendant herein) acquired the assets of the former Chrysler entity ("Old Chrysler"), which originally manufactured the Class Vehicles. Instead, as alleged herein, all of Plaintiffs' and the Class's claims arise exclusively from the duties, obligations and conduct that Chrysler undertook after June 10, 2009.

35.    On or around April 30, 2009, Old Chrysler, which is not a defendant herein, filed a petition for bankruptcy. *See In re: Old Carco LLC, et al.*, Case No. 09-50002 (SMB) (Bankr.

14

S.D.N.Y.). On June 10, 2009, Chrysler (a defendant herein) acquired the assets of Old Chrysler. The Master Transaction Agreement and Bankruptcy Court Sale Order governed the sale of Old Chrysler's assets and limited the liabilities that New Chrysler assumed for Old Chrysler's conduct.

36.     The Bankruptcy Court has issued a series of Orders concerning Chrysler's liability for vehicles manufactured by Old Chrysler before June 10, 2009. Briefly, these available claims include: (1) State Lemon Law Act and Magnusson Moss Warranty Claims for vehicle's manufactured on or after June 10, 2004; (2) Product liability claims for vehicles manufactured before June 10, 2009 that were involved in accidents; and (3) Warranty claims arising from the written warranties that came with vehicles manufactured before June 10, 2009 or extended service contracts for such vehicles entered into before June 10, 2009.

37.     In addition, Chrysler is also liable for obligations or duties that it assumed or undertook after the June 10, 2009 Sale Order.

38.     Here, Plaintiffs' and the Class's claims against Chrysler asserted herein are based exclusively on Chrysler's conduct which arose long after the June 10, 2009 Sale Order, including its January 2013 Defect Notice, its voluntary promise or obligation to cure the Defect, and its failure to honor its obligation. All of these events arose after June 10, 2009, and none of the claims based on them is barred by the Sale Order.

## VI.    CLASS ACTION ALLEGATIONS.

39.     Plaintiffs bring this class action on behalf of the following Class:

All persons and entities in Louisiana that own a Model Year 2002-2003 Jeep Liberty or Model Year 2002-2004 Jeep Grand Cherokee or Model Year 2003-2004 Dodge Viper ("Class Vehicles") manufactured with an airbag system occupant restraint control module (the "Class"). Excluded from the Class are any individuals or entities who suffered personal injury as a result of a defect in the

15

airbags, side curtain airbags and seatbelt restraints. Also excluded from the Class are Defendant and its officers, directors and subsidiaries.

40.     Pursuant to Rule 23(a)(1), the Class is sufficiently "numerous" such that joinder of all Class members would be impracticable. There are more than 775,000 Class Vehicles in the United States and at least tens of thousands of Class Vehicles in Louisiana.

41.     Pursuant to Rule 23(a)(2), there are "common" questions of fact or law that can be answered for all Class members. These common issues include:

a.  Whether Chrysler is liable to the Class for its breach of contractual obligations as a result of its failure to comply with its promise, set forth in the January 2013 Defect Notice, to remedy the Defect in the Class Vehicles and to make every effort to provide the remedy as soon as possible;

b.  Whether Chrysler expressly agreed to repair or replace the Class Vehicle airbag systems free of charge and, if so, has it breached its agreement to do so as a result of its delay in providing replacement parts;

c.  Whether Chrysler breached the covenant of good faith and fair dealing as a result of its undue delay in providing a replacement or repair of parts affected by the Defect;

d.  Whether Class Members are entitled to damages from Chrysler as a result of the loss of use or enjoyment of their Class Vehicles;

e.  Whether Class Members are entitled to damages from Chrysler as a result of the diminution of value in their Class Vehicles resulting from the Defect and as a result of paying out-of-pocket costs for diagnosis or repairs for their airbag systems;

f.  Whether an Injunction should be entered requiring Chrysler to provide alternative transportation for the Class until it remedies the Defect in the Class Vehicles;

16

g.  Whether the Class is entitled to a declaratory judgment declaring the Class Vehicles' airbag systems defective and Chrysler responsible for replacing and repairing the Defect;

h.  Whether TRW is liable in redhibition to the Class for its manufacturing of occupant restraint control modules that were sold as part of the Class Vehicles;

i.  Whether Class members are entitled to damages from TRW as a result of its providing defective occupant restraint control modules that diminished the value of the Class Vehicles;

i.  Whether Kemet is liable in redhibition to the Class for its manufacturing of parts used in the occupant restraint control modules that were sold as part of the Class Vehicles;

j.  Whether Class members are entitled to damages from Kemet as a result of its providing defective occupant restraint control modules that diminished the value of the Class Vehicles;

42.   Pursuant to Rule 23(a)(3), Plaintiffs satisfy the "typicality" requirement. Plaintiffs purchased a Class Vehicle that Chrysler admitted has a defective part, and Plaintiffs' claims are based on the same factual and legal theories as absent Class members.

43.   Pursuant to Rule 23(a)(4), Plaintiffs and undersigned counsel satisfy the "adequacy" requirement. Plaintiffs intend to prosecute this class action vigorously on behalf of the Class, and they have no conflicts or interests antagonistic to the Class. Undersigned counsel are experienced in handling class and complex litigation, including claims involving product defect and warranty issues.

44.   The Class should be certified pursuant to Rule 23(b)(3) for purposes of the claims seeking damages (Counts I-IV). The Class satisfies the "predominance" requirement because the

17

common issues set forth above predominate over individual issues. The only potential individual issues relate to the amount of damages per Class member, which are insufficient to overcome a finding of predominance.

45.     In addition, this action satisfies the "superiority" requirement. The monetary value of each Class member's claims is tiny compared to the burden and expense of litigation, and judicial economy is served by litigating the Class claims in one case. In addition, although Chrysler has purported to commence a voluntary recall, it has not followed through on that promise, no regulatory entity has required it to follow through on that promise, and many dangerous Class Vehicles remain on the road and experience inadvertent airbag deployment.

46.     The Class should also be certified pursuant to Rule 23(b)(2) for purposes of the claims seeking declaratory and injunctive relief (Counts V-VI). Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole. In particular, Chrysler and TRW have acknowledged the existence of a Class-wide Defect, but have done nothing to remedy or repair the Defect and have not provided Class members with replacement vehicles.

## VII.    CAUSES OF ACTION.

**COUNT I**
**Breach of Contract – Damages**
**(Against Chrysler)**

47.     Plaintiffs incorporate by reference paragraphs 1-46 above as if set forth fully herein.

48.     Through the Defect Notice, Chrysler undertook certain obligations to perform certain acts. Chrysler received a benefit from the Defect notice, in that acknowledgement of the Defect and the promise to remedy it conferred upon it goodwill from Class members and the

public generally. Further, the promise to remedy the Defect furthered Chrysler's business goals, including revenues relating to the servicing and maintenance of Class Vehicles.

49.     In the Defect Notice, Chrysler acknowledged the existence of the Defect in all Class Vehicles ("Chrysler has decided that a defect, which relates to motor vehicle safety, exists in some 2002 and 2003 model year Jeep® Liberty vehicles and 2002 through 2004 model year Jeep® Grand Cherokee vehicles."). Chrysler has failed to remedy the Defect.

50.     In the Defect Notice, Chrysler acknowledged that the Defect creates a safety risk (the Defect "relates to motor vehicle safety" and advices Class Members to have the Defect repaired "to ensure your safety"). Chrysler has failed to remedy the safety risk.

51.     In the Defect Notice, Chrysler promised to repair or remedy the Defect free of charge ("Chrysler intends to repair your vehicle free of charge (parts and labor)."). Chrysler has failed to remedy the Defect free of charge.

52.     In the Defect Notice, Chrysler promised to make every effort to locate and make available to Class Members the replacement parts as quickly as possible ("Chrysler is making every effort to obtain these parts as quickly as possible.").Chrysler has failed to make every effort to locate and make available the replacement parts.

53.     In the Defect Notice, Chrysler promised to provide the remedy as quickly as possible ("Chrysler is making every effort to obtain these parts as quickly as possible."). Chrysler has failed to make these replacement parts available as quickly as possible.

54.     The cumulative effect of Chrysler's Defect Notice and subsequent communications to Plaintiffs and the Class was to extend a lifetime warranty to the vehicles as it relates to the airbag occupant restraint control module. Chrysler, however, has failed to honor its obligation to cure the Defect.

55.     The Class is entitled to damages resulting from Chrysler's breach of its obligations as set forth in the Defect Notice, including without limitation:

      a.     The diminished value of their vehicles;

      b.     Expenses and costs incurred by Class members when having their occupant restraint control modules and airbag system squibs diagnosed, remedied or repaired;

      c.     Expenses and costs incurred by Class members who have been forced to obtain alternative means of transportation; and

      d.     Costs, attorneys' fees and all other damages permitted by law.

## COUNT II
### Breach of the Covenant of Good Faith and Fair Dealing -- Damages
### (Against Chrysler)

56.     Plaintiffs incorporate by reference paragraphs 1-46 above as if set forth fully herein.

57.     In the Defect Notice, Chrysler promised to repair or remedy the Defect free of charge ("Chrysler intends to repair your vehicle free of charge (parts and labor)."). Chrysler has failed to remedy the Defect free of charge in breach of good faith and fair dealing.

58.     In the Defect Notice, Chrysler promised to make every effort to locate and make available to Class Members the replacement parts as quickly as possible ("Chrysler is making every effort to obtain these parts as quickly as possible.").  Chrysler has failed to make "every effort" to locate and make available the replacement parts in contravention of the covenant of good faith and fair dealing.

59.     In the Defect Notice, Chrysler promised to provide the remedy as quickly as possible ("Chrysler is making every effort to obtain these parts as quickly as possible.").

20

Chrysler has failed to make these replacement parts available "as quickly as possible" in contravention of the covenant of good faith and fair dealing.

60.     The Class is entitled to damages resulting from Chrysler's breach of its obligations as set forth in the Defect Notice, including without limitation:

        a.      The diminished value of their vehicles;

        b.      Expenses and costs incurred by Class members when having their occupant restraint control modules and airbag system squibs diagnosed, remedied or repaired;

        c.      Expenses and costs incurred by Class members who have been forced to obtain alternative means of transportation; and

        d.      Costs, attorneys' fees and all other damages permitted by law.

**COUNT III**
**Redhibition – Damages**
**(Against TRW)**

61.     Plaintiffs incorporate by reference paragraphs 1-46 above as if set forth fully herein.

62.     TRW manufactured the occupant restraint control modules in the Class Vehicles.

63.     Redhibitory defects include defects that render an entire product useless, or that diminish its value or usefulness:

> A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect. The existence of such a defect gives a buyer the right to obtain rescission of the sale.
>
> A defect is redhibitory also when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price. The existence of such a defect limits the right of a buyer to a reduction of the price.

21

La. Civ. Code. Ann. Art 2520 (2010).

64.    A manufacturer is presumed to know of a defect in a good it manufactures. La.

Civ. Code. Ann. Art. 2545 (2010).

65.    A manufacturer of a defective good is liable to the buyer for damages:

> A seller who knows that the thing he sells has a defect but omits to declare it, or a
> seller who declares that the thing has a quality that he knows it does not have, is
> liable to the buyer for the return of the price with interest from the time it was
> paid, for the reimbursement of the reasonable expenses occasioned by the sale and
> those incurred for the preservation of the thing, and also for damages and
> reasonable attorney fees. If the use made of the thing, or the fruits it might have
> yielded, were of some value to the buyer, such a seller may be allowed credit for
> such use or fruits.

La. Civ. Code. Ann. Art. 2545 (2010). Included in the damages formulation is a reduction of the

purchase price:

> A buyer may choose to seek only reduction of the price even when the redhibitory
> defect is such as to give him the right to obtain rescission of the sale. In an action
> for rescission because of a redhibitory defect the court may limit the remedy of
> the buyer to a reduction of the price.

La. Civ. Code. Ann. Art. 2541 (2010).

66.    A manufacturer of a component that is installed in a product and sold with the

whole product is liable to the buyer, even though it did not deal directly with the buyer.

67.    The occupant restraint control modules that TRW manufactured were

manufactured with redhibitory defects that existed at the time they were manufactured and that

did not result from the normal and intended use of the Class Vehicles or airbag systems. In

particular, the Defect causes inadvertent airbag deployment. The Defect renders the occupant

restraint control modules and the Class Vehicles unfit for their normal and intended use as

vehicles equipped with safe airbag systems. Alternatively, the Defect renders the Class Vehicles

unfit for their particular purpose as safe vehicles equipped with effective airbag systems.

22

68.     TRW has been notified of the Defect and it has failed to repair or remedy the Defect.

69.     The occupant restraint control modules were sold as part of the Class Vehicles, and were not sold as separate and independent items. The occupant restraint control modules were fully integrated into the Class Vehicles. The Class Vehicles were manufactured and sold as vehicles containing an airbag system. On their own, and separate from the Class Vehicles, the occupant restraint control modules have no use.

70.     The Class was not aware of, and could not have known of the existence of the Defect at the time they purchased their Class Vehicles. Rather, the Class was not aware of existence of the Defect until Chrysler sent the Defect Notice.

71.     The Class would not have purchased the Class Vehicles, or alternatively, would have paid substantially less for them had they been aware of the Defect.

72.     The Class is entitled to damages resulting from TRW's manufacture and sale of occupant restraint control modules containing redhibitory defects, including without limitation:

a.     The diminished value of their vehicles commencing on the date of purchase through the date judgment is entered;

b.     Expenses and costs incurred by Class members when having their occupant restraint control modules and airbag system squibs diagnosed, remedied or repaired commencing on the date of purchase through the date judgment is entered;

c.     Expenses and costs incurred by Class members who have been forced to obtain alternative means of transportation at any time as a result of defects in their occupant restraint control modules; and

23

    d.      Costs, attorneys' fees and all other damages permitted by law.

## COUNT IV
### Redhibition – Damages
### (Against Kemet)

73.    Plaintiffs incorporate by reference paragraphs 1-46 above as if set forth fully herein.

74.    Kemet manufactured the squibs used in the occupant restraint control modules in the Class Vehicles.

75.    Redhibitory defects include defects that render an entire product useless, or that diminish its value or usefulness:

> A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect. The existence of such a defect gives a buyer the right to obtain rescission of the sale.
>
> A defect is redhibitory also when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price. The existence of such a defect limits the right of a buyer to a reduction of the price.

La. Civ. Code. Ann. Art 2520 (2010).

76.    A manufacturer is presumed to know of a defect in a good it manufactures.  La. Civ. Code. Ann. Art. 2545 (2010).

77.    A manufacturer of a defective good is liable to the buyer for damages:

A seller who knows that the thing he sells has a defect but omits to declare it, or a seller who declares that the thing has a quality that he knows it does not have, is liable to the buyer for the return of the price with interest from the time it was paid, for the reimbursement of the reasonable expenses occasioned by the sale and those incurred for the preservation of the thing, and also for damages and reasonable attorney fees. If the use made of the thing, or the fruits it might have yielded, were of some value to the buyer, such a seller may be allowed credit for such use or fruits.

La. Civ. Code. Ann. Art. 2545 (2010). Included in the damages formulation is a reduction of the purchase price:

> A buyer may choose to seek only reduction of the price even when the redhibitory defect is such as to give him the right to obtain rescission of the sale.In an action for rescission because of a redhibitory defect the court may limit the remedy of the buyer to a reduction of the price.

La. Civ. Code. Ann. Art. 2541 (2010).

78.    A manufacturer of a component that is installed in a product and sold with the whole product is liable to the buyer, even though it did not deal directly with the buyer.

79.    The squibs and occupant restraint control module components that Kemet manufactured were manufactured with redhibitory defects that existed at the time they were manufactured and that did not result from the normal and intended use of the Class Vehicles or airbag systems. In particular, the Defect causes inadvertent airbag deployment. The Defect renders the occupant restraint control modules and the Class Vehicles unfit for their normal and intended use as vehicles equipped with safe airbag systems. Alternatively, the Defect renders the Class Vehicles unfit for their particular purpose as safe vehicles equipped with effective airbag systems.

80.    Kemet has been notified of the Defect and it has failed to repair or remedy the Defect.

81.    The squibs and occupant restraint control module components were sold as part of the Class Vehicles, and were not sold as separate and independent items. The squibs and occupant restraint control module components were fully integrated into the Class Vehicles. The Class Vehicles were manufactured and sold as vehicles containing an airbag system. On their own, and separate from the Class Vehicles, the squibs and occupant restraint control module components have no use to the Class.

82.     The Class was not aware of, and could not have known of the existence of the Defect at the time they purchased their Class Vehicles. Rather, the Class was not aware of existence of the Defect until Chrysler sent the Defect Notice.

83.     The Class would not have purchased the Class Vehicles, or alternatively, would have paid substantially less for them had they been aware of the Defect.

84.     The Class is entitled to damages resulting from TRW's manufacture and sale of occupant restraint control modules containing redhibitory defects, including without limitation:

      a.     The diminished value of their vehicles commencing on the date of purchase through the date judgment is entered;

      b.     Expenses and costs incurred by Class members when having their occupant restraint control modules and airbag system squibs diagnosed, remedied or repaired commencing on the date of purchase through the date judgment is entered;

      c.     Expenses and costs incurred by Class members who have been forced to obtain alternative means of transportation at any time as a result of defects in their occupant restraint control modules; and

      d.     Costs, attorneys' fees and all other damages permitted by law.

### COUNT V
### Declaratory Judgment
### (Against Chrysler)

85.     Plaintiffs incorporate by reference paragraphs 1-46 above as if set forth fully herein.

86.     In the Defect Notice, Chrysler acknowledged the existence of the Defect in all Class Vehicles ("Chrysler has decided that a defect, which relates to motor vehicle safety, exists

in some 2002 and 2003 model year Jeep® Liberty vehicles and 2002 through 2004 model year Jeep® Grand Cherokee vehicles.");

87.     In the Defect Notice, Chrysler acknowledged that the Defect creates a safety risk (the Defect "relates to motor vehicle safety" and advices Class Members to have the Defect repaired "to ensure your safety").

88.     In the Defect Notice, Chrysler promised to repair or remedy the Defect free of charge ("Chrysler intends to repair your vehicle free of charge (parts and labor).");

89.     In the Defect Notice, Chrysler promised to make every effort to locate and make available to Class Members the replacement parts as quickly as possible ("Chrysler is making every effort to obtain these parts as quickly as possible.").

90.     In the Defect Notice, Chrysler promised to provide the remedy as quickly as possible ("Chrysler is making every effort to obtain these parts as quickly as possible.").

91.     The Class is entitled to a declaratory judgment that declares:

    a.     The Class Vehicles have a defect in the airbag systems that relates to safety;

    b.     Chrysler is obligated to repair or remedy the Defect free of charge inclusive of all parts and labor;

    c.     Chrysler is obligated to provide the remedy or repair as quickly as possible;

    d.     Chrysler is obligated to make every effort to provide the remedy or repair; and

      e.      Chrysler is obligated to pay Class members a sum of money equal to all diagnostic, repair or replacement costs that they have incurred relating to their occupant restraint control module or squibs since January 1, 2013.

### <u>COUNT VI</u>
**Injunction to Remedy the Defect by a Date Certain and Provide Other Relief**
**(Against Chrysler)**

92.    Plaintiffs incorporate by reference paragraphs 1-46 above as if set forth fully herein.

93.    In the Defect Notice, Chrysler promised to repair or remedy the Defect free of charge ("Chrysler intends to repair your vehicle free of charge (parts and labor)."). Chrysler has failed to remedy the Defect free of charge.

94.    In the Defect Notice, Chrysler promised to make every effort to locate and make available to Class Members the replacement parts as quickly as possible ("Chrysler is making every effort to obtain these parts as quickly as possible."). Chrysler has failed to make "every effort" to locate and make available the replacement parts.

95.    In the Defect Notice, Chrysler promised to provide the remedy as quickly as possible ("Chrysler is making every effort to obtain these parts as quickly as possible."). Chrysler has failed to make these replacement parts available "as quickly as possible."

96.    The Class is entitled to an injunction ordering Chrysler:

      a.      to repair or remedy the Defect free of charge inclusive of all parts and labor;

      b.      to provide the remedy or repair as quickly as possible;

      c.      to make every effort to provide the remedy or repair; and

        d.      to make appropriate substitute vehicles available to the Class until the Defect in their Class Vehicles is remedied or repaired.

## VIII.   PRAYER FOR RELIEF.

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, respectfully request:

A.      An Order certifying the Class with Plaintiffs serving as Class Representatives and Plaintiffs' counsel as Class Counsel;

B.      An award of damages, including all actual, general, special, incidental, consequential, expectancy, statutory, treble, and punitive damages to which Plaintiffs and the Class are entitled, as well as pre-judgment and post-judgment interest on all such monetary relief as a result of Chrysler's breach of contract (Count I); Chrysler's breach of the covenant of good faith and fair dealing (Count II); TRW's manufacture and sale of occupant restraint control modules containing redhibitory defects (Count III); and Kemet's manufacture and sale of squibs and occupant restraint control module components containing redhibitory defects (Count IV).

D.      A declaratory judgment declaring the Class Vehicles defective and Chrysler's obligation to remedy the Defect and fulfill its obligations and promises (Count V).

E.      An injunction as is appropriate and necessary to remedy Chrysler's continuing wrongful conduct arising from its failure to remedy the Defect within a reasonable time frame (Count VI).

F.      All such further relief as deemed appropriate by the Court.

## DEMAND FOR JURY TRIAL

Plaintiffs respectfully demand a trial by jury on all claims and issues so triable.

RESPECTFULLY SUBMITTED,

Dated: August 27, 2013

/s/ Patrick E. Cafferty
Patrick E. Cafferty (P35613)
Cafferty Clobes Meriwether & Sprengel LLP
101 North Main St., Suite 565
Ann Arbor, Michigan 48104
Telephone: (734) 769-2144
Facsimile: (734) 769-1207
Email: pcafferty@caffertyclobes.com

Anthony F. Fata
Cafferty Clobes Meriwether & Sprengel LLP
30 N. LaSalle St., Suite 3200
Chicago, Illinois 60602
Telephone: (312) 782-4880
Facsimile: (312) 782-4485
Email: afata@caffertyclobes.com

Bryan L. Clobes
Cafferty Clobes Meriwether & Sprengel LLP
1101 Market St., Suite 2640
Philadelphia, PA 19107
Telephone: (215) 864-2800
Facsimile: (215) 864-2810
Email: bclobes@caffertyclobes.com

Jeffrey M. Salas
Salas Wang LLC
155 N. Wacker Dr., Suite 4250
Chicago, Illinois 60606
Telephone: (312) 803-4963
Facsimile: (312) 244-3151
Email: jsalas@salaswang.com