UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAY HADLEY and LINDA HADLEY,

      Plaintiffs,

v.                                          Civil Case No. 13-13665
                                              Honorable Patrick J. Duggan

CHRYSLER GROUP LLC and
TRW AUTOMOTIVE HOLDINGS GROUP,

      Defendants.
_____/

## OPINION AND ORDER

Plaintiffs filed this putative class action lawsuit against Defendants,[1] seeking to expedite the repair or replacement of defective airbag system occupant restraint control modules ("airbag modules") in certain Jeep Liberty, Jeep Grand Cherokee, and Dodge Viper vehicles. In addition to declaratory and injunctive relief, Plaintiffs seek damages from Defendants allegedly incurred as a result of the defect and/or the delay in repairing the defect. Presently before the Court are the following motions filed by Defendant Chrysler Group LLC ("New Chrysler") on November 12, 2013:

---

[1]Plaintiffs named Kemet Corporation as an additional defendant in their initial complaint, but voluntarily dismissed Kemet on October 28, 2013 and did not name it as a defendant in the amended complaint filed on the same date. (ECF Nos. 6, 7.)

- to Dismiss brought under Federal Rules of Civil Procedure 12(b)(1) and (6) (ECF No. 9);

- alternatively to stay (ECF No. 10); and

- to transfer pursuant to 28 U.S.C. § 1412 (ECF No. 11).

Also pending before the Court is a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6), filed by Defendant TRW Automotive Holdings Corporation ("татак") on November 25, 2013. (ECF No. 15.) The motions have been fully briefed and the Court heard oral argument on February 13, 2014.

## I.   Factual and Procedural Background

Plaintiffs initiated this action against Defendants on August 27, 2013, and filed a First Amended Complaint on October 28, 2013. Plaintiffs seek to represent a class of Louisiana residents who own Model Year 2002-2003 Jeep Liberty, Model Year 2002-2004 Jeep Grand Cherokee, or Model Year 2003-2004 Dodge Viper vehicles (collectively "Class Vehicles"). (ECF No. 7 ¶ 1.) Plaintiffs own a 2003 Jeep Grand Cherokee. (*Id.* ¶ 7.) Plaintiffs allege that the Class Vehicles contain defective airbag modules that were manufactured by TRW. (*Id.*) Plaintiffs exclude from the putative class any individuals who suffered personal injury as a result of the defect. (*Id.*)

New Chrysler does not dispute the existence of the defect in the Class

Vehicles.  (*See, e.g., id.* ¶ 3.)  In fact, in January 2013, New Chrysler sent recall notices to owners of Class Vehicles, acknowledging the defect and advising in part:

> Chrysler intends to repair your vehicle free of charge (parts and labor).  Unfortunately, the parts required to provide a permanent remedy for this condition are currently not available.  Chrysler is making every effort to obtain these parts as quickly as possible.  Chrysler will contact you again by mail, with a follow-up recall notice, when the remedy parts are available.

(*Id.* ¶ 23; *see also* ECF No. 11-10 at Pg ID 402.)  As of August 27, 2013, however, New Chrysler had not obtained the remedial parts or repaired the Class Vehicles.

Plaintiffs therefore brought this lawsuit alleging the following "counts": (I) breach of contract against New Chrysler; (II) breach of the covenant of good faith and fair dealing against New Chrysler; (III) redhibition under Louisiana Civil Code Article 2520 against TRW; (IV) declaratory judgment against New Chrysler; and (V) "injunction to repair the defect by a date certain and provide other relief" against New Chrysler.  For relief, Plaintiffs seek the following: (1) damages from Defendants resulting from Plaintiffs' loss of use or enjoyment of their Class Vehicles, their out-of-pocket costs for diagnosing or repairing their airbag systems, and the diminution of value of their Class Vehicles; (2) an order requiring New Chrysler to provide alternative transportation until the defect is repaired; (3) a

declaratory judgment declaring that the airbag systems are defective, that New Chrysler is responsible for repairing the defect free of charge inclusive of all parts and labor, and that New Chrysler must provide the repair as quickly as possible and using every effort; and (4) an injunction ordering New Chrysler to repair the defect free of charge, as quickly as possible, and using every effort.

New Chrysler did not manufacture the Class Vehicles, nor did it even exist when the vehicles were manufactured. Rather, New Chrylser was incorporated on April 28, 2009 (*see* ECF No. 11-2),[2] in relation to the bankruptcy of the now defunct Chrysler, LLC ("Old Chrysler"). On April 30, 2009, Old Chrysler and several of its subsidiaries filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the Southern District of New York ("bankruptcy court").[3] *See In re Old Carco LLC*, Case No. 09-50002 (Bankr. S.D.N.Y.) New

---

[2]The Court can take judicial notice and consider documents posted on a government website. *Lamay v. Balcarel*, No. 2:13-CV-10482, 2013 WL 4053203, at *3 n.5 (E.D. Mich. Aug. 12, 2013) (unpublished op.) ("Public records and government documents, including those available from reliable resources on the Internet, are subject to judicial notice"); *Hames v. Sepanek*, No. 0:13-111, 2013 WL 5235567, at *1 n.1 (E.D. Ky. Sept. 17, 2013) (unpublished op.) (finding that "[r]ecords and information located on government websites are self-authenticating under Fed. R. Evid. 902" and thus can be judicially noticed.)

[3]This Court can take judicial notice of the bankruptcy proceedings and filings that are part of the record of those proceedings. *See Sanders Confectionery Prod., Inc. v. Heller Financial, Inc.*, 973 F.2d 474, 480 n.3 (6th Cir. 1992).

Chrysler was created to purchase certain assets of Old Chrysler. The purchase was in accordance with a June 1, 2009 Sale Order issued by the bankruptcy court. (ECF No. 11-3.)

Pursuant to the Sale Order, New Chrysler assumed only limited liabilities of Old Chrysler, referred to as the "Assumed Liabilities." (*Id.* ¶ 35.) The Assumed Liabilities include

> Old Chrysler's "notification, remedy and other obligations under 49 U.S.C. §§ 30116 through 30120 of the NTMVSA [National Traffic and Motor Vehicle Safety Act] relating to vehicles manufactured by the Debtors prior to the Closing Date that have a defect related to motor vehicle safety or do not comply with applicable motor vehicle safety standards prescribed under the NTMVSA. The Purchaser [New Chrysler] shall not otherwise be liable for any failure by the Debtors to comply with the provisions of the NTMVSA.

(*Id.* ¶ EE.) The bankruptcy court retained jurisdiction "to interpret, implement and enforce the terms and provisions of th[e] Sale Order including . . . to protect the Purchaser [New Chrysler] against any Claims . . .." (*Id.* ¶ 59.)

In accordance with its Assumed Liabilities, New Chrysler responded to an October 2011 National Highway Traffic Safety Administration ("NHTSA") investigation into complaints of inadvertent airbag deployments in Class Vehicles by conducting a recall of those vehicles. (ECF No. 11-6 to 11-9.) Following NHTSA's directions, New Chrysler sent notices to owners of Class Vehicles,

notifying them of the defect in the vehicles and New Chrysler's intent to repair the defect.  (First Am. Compl. ¶ 23; *see also* ECF No. 11-10.)  In light of New Chrysler's recall of the Class Vehicles to remedy the defect, the NHTSA closed its investigation on February 21, 2013.  (ECF No. 11-11.)  New Chrysler is obligated under the law, however, to make quarterly reports to the NHTSA regarding the status of its recall efforts.  *See* 49 C.F.R. § 573.3.

By September 13, 2013, New Chrysler had obtained parts to repair the defective airbag modules in the Model Year 2002-2003 Jeep Liberty vehicles that were subject to the recall.  (ECF No. 9-9 ¶ 24.)  Between September 13 and 26, 2013, New Chrysler sent notices to owners of those vehicles, instructing them to "contact their Chrysler, Jeep, or Dodge dealer right away to schedule a service appointment" to make the needed repair.  (*Id*. Ex. 4 (emphasis removed).)  The notice stated that New Chrysler will make the repair free of charge (including parts and labor).  (*Id*.)  By January 22, 2014, New Chrysler had obtained parts to also repair the defective airbag modules in Model Year 2002-2004 Jeep Grand Cherokee vehicles that were subject to the recall.  Beginning on that date, notices were sent to owners of those vehicles providing the same information previously sent to the owners of the Jeep Liberty vehicles.  (ECF No. 28 at Pg ID 654.)  Plaintiffs' counsel acknowledged at the motion hearing that his clients (who own a

2003 Jeep Grand Cherokee) have received the notice.

## II.    TRW's Motion to Dismiss

In Count III of the First Amended Complaint, Plaintiffs assert a claim of redhibition against TRW pursuant to Louisiana Civil Code article 2545.  (First Am. Compl. ¶¶ 56-68.)  Plaintiffs allege that the defect(s) in the airbag modules manufactured by TRW render the Class Vehicles "unfit for their normal and intended use as vehicles equipped with safe airbag systems" or "unfit for their particular purpose as safe vehicles equipped with effective airbag systems." (*Id.* ¶ 63.)  Plaintiffs further allege that they would not have purchased the Class Vehicles, or would have paid substantially less, had they been aware of the defect. (*Id.* ¶ 67.)  According to Plaintiffs, "[a] manufacturer of a component that is installed in a product and sold with the whole product is liable to the buyer, even though it did not deal directly with the buyer."  (First Am. Compl. ¶ 66.)  TRW seeks dismissal of Plaintiffs' redhibition claim, contending that this last assertion is contrary to the law.

Specifically, in its motion to dismiss, TRW argues that Plaintiffs cannot state a viable redhibition claim against it as the manufacturer of a component part installed in their vehicle which was manufactured and sold by other entities.  TRW relies primarily on the plain language of Louisiana's redhibition statute which

allows for an action only by a "buyer" against a "seller." La. Civ. Code Ann. art. 2520. But even if Plaintiffs can state a viable redhibition claim, TRW further contends that Plaintiffs lack standing to assert the claim and that it is time-barred by the applicable statute of limitations. TRW argues that the longest limitations period applicable to Plaintiffs' redhibition claim is either Michigan's period of six years or Louisiana's period of four years, both of which TRW claims began to run when Plaintiffs purchased their Class Vehicle. As Plaintiffs allege that the defective vehicle was delivered to them in September 2002, TRW contends that the limitations period expired in September 2006 or 2008.

TRW also argues that Plaintiffs' redhibition claim is barred by a ten year period of repose set forth in Louisiana Civil Code article 2534. This period began to run upon "perfection of the contract" (ECF No. 15 at Pg ID 479, quoting *Grenier v. Med. Eng'g Corp.*, 243 F.3d 200, 206 (5th Cir. 2001)), or when Plaintiffs took delivery of the Class Vehicle in September 2002. As such, TRW contends that Plaintiffs' redhibition claim expired in September 2012, almost a year before they filed suit.

### III. New Chrysler's Motions

New Chrysler has moved for dismissal of Plaintiffs' claims against it, alternatively to stay the case under the doctrine of primary jurisdiction in light of

the NHTSA's oversight and administration of the vehicle recall, and to transfer the claims against New Chrysler to the bankruptcy court to allow that court to assess whether New Chrysler is subject to the claims under the Sale Order. More specifically, in its motion to dismiss, New Chrysler argues that this Court lacks subject matter jurisdiction over Plaintiffs' claims and, alternatively, that Plaintiffs fail to state claims on which relief may be granted.[4] In its alternative motion to stay, New Chrysler argues that this Court should decline to inject itself in the recall of the Class Vehicles as the NHTSA is overseeing and administering the recall in accordance with the duties assigned to it under the law. In its motion to transfer pursuant to 28 U.S.C. § 1412, New Chrysler contends that Plaintiffs' claims against it arise or are related to the bankruptcy proceedings and the interest of justice will be served by transferring those claims to the bankruptcy court to make

---

[4]To summarize, New Chrysler seeks dismissal of Plaintiffs' claims for failure to state a claim upon which relief may be granted, arguing that: (1) Plaintiffs fail to plead facts to support a breach of contract claim because New Chrysler's alleged promise was contingent on an event that has not occurred and no actual damages have been asserted; (2) under Louisiana law there is no separate claim for breach of a duty of good faith and fair dealing; (3) Plaintiffs' request for declaratory and injunctive relief is preempted by the federal Motor Vehicle Safety Act; (4) a claim for injunctive relief is not a stand alone cause of action; (5) they fail to plead facts demonstrating an actual controversy warranting the requested equitable relief; (5) they fail to plead facts suggesting that they have no adequate remedy at law or that they will suffer irreparable injury in the absence of an injunction; and (6) the claims are barred by the bankruptcy court's Sale Order.

the initial determination of whether the claims arise out of a liability assumed by New Chrysler.

## IV.   Order of Issues to Resolve

The issue raised in Defendants' motions that this Court must address first is whether Article III standing is lacking.  If Plaintiffs have no injury-in-fact or their claims are moot– as asserted in Defendants' motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1)– this Court lacks subject matter jurisdiction to decide the other issues raised in Defendants' motions.

If this Court has subject matter jurisdiction, it believes it should next address whether Plaintiffs state a viable redhibition claim against TRW and whether the bankruptcy court should be tasked with deciding whether Plaintiffs' claims against New Chrysler are barred by the Sale Order because they arise from liabilities not assumed by New Chrysler.  If New Chrysler did not assume the liabilities from which Plaintiffs' claims arise, the Court would be rendering an advisory opinion were it to rule on the merits of those claims as challenged by New Chrysler in its motion to dismiss.  Only if Plaintiffs can pursue their claims against New Chrysler is it necessary to decide whether the doctrine of primary jurisdiction warrants a stay.

## V.   Article III Standing

-10-

Standing is a fundamental element of "federal jurisdiction over a 'case' or 'controversy' as set forth in Article III of the United States Constitution." *Morrison v. Bd. of Educ. of Boyd Cnty.*, 521 F.3d 602, 608 (6th Cir. 2008); *see also Raines v. Byrd*, 521 U.S. 811, 818, 117 S. Ct. 2312, 2317 (1997) ("No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." (quotation marks and citation omitted)). "By now, it is axiomatic that a litigant demonstrates Article III standing by tracing a concrete and particularized injury to the defendant– whether actual or imminent– and establishing that a favorable judgment would provide redress." *Morrison*, 521 F.3d at 608 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136 (1992)). Three elements must be satisfied to confer standing on a plaintiff:

> First, the plaintiff must have suffered an injury in fact– an invasion of a legally protected interest which is (a) concrete and particularized ... and (b) actual or imminent, not conjectural or hypothetical .... Second, there must be a causal connection between the injury and the conduct complained of– the injury has to be fairly ... traceable to the challenged action of the defendant, and not ... the result of the independent action of some third party not before the court. ... Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan*, 504 U.S. at 560-61, 1121 S. Ct. at 2136 (internal quotation marks and

citations omitted, brackets removed).

New Chrysler first contends that Plaintiffs allege no injury in fact resulting from the asserted delay in repairing the Class Vehicles.[5] New Chrysler construes Plaintiffs' claims against it as alleging a "fail[ure] to fulfill a gratuitous promise to provide them a 'free' vehicle repair" or a "delay in fulfilling this 'free repair' promise." (ECF No. 9 at Pg ID 96.) There is no allegation that New Chrysler has withdrawn this promise and New Chrysler maintains that Plaintiffs plead no facts to support their bald assertions of damages allegedly arising as a result of the delayed repairs.

In their First Amended Complaint, Plaintiffs allege that putative class members have suffered the following damages as a result of the defect and/or delay in repairing the defect: (a) diminished value and lost enjoyment of their vehicles; (b) expenses and costs to have their airbag systems diagnosed, remedied, or repaired; and (c) expenses and costs incurred having to obtain alternative means of transportation. Plaintiffs' counsel confirmed at the motion hearing that these are the only damages Plaintiffs claim to have suffered. New Chrysler is correct, however, that Plaintiffs plead no facts to support these general assertions of

---

[5]TRW's arguments as to why this Court lacks subject matter jurisdiction overlap those arguments asserted by New Chrysler. As such, the Court's analysis applies to the motions filed by both defendants.

damages suffered and/or to suggest that the damages arose from New Chrysler's alleged delay in repairing the defect.

Plaintiffs do allege that on or after July 25, 2013, the airbag light in their Class Vehicle illuminated and they therefore took the vehicle to the dealership "and paid out-of-pocket for the dealership to diagnose the problem."[6] (First Am. Compl. ¶ 29.) However by that date (i.e., July 25, 2013), New Chrysler already had informed Plaintiffs and all owners of Class Vehicles of the defect and thus it was unnecessary for Plaintiffs to seek and pay for a "diagnosis." In other words, these costs did not conceivably flow from New Chrysler's alleged misconduct (i.e. a delay in repairing the acknowledged defect). In any event, as New Chrysler's counsel represented at the motion hearing, New Chrysler has agreed to reimburse vehicle owners for such costs.

This Court also agrees with New Chrysler that Plaintiffs' pleading is devoid of facts to support their assertion that putative class members have experienced a diminution in the value or lost use or enjoyment of their Class Vehicles as a result of the delay in repairing the defect. Plaintiffs' counsel did not offer any facts at the motion hearing to suggest that Plaintiffs could amend their complaint to support

---

[6]Plaintiffs' counsel represented at the motion hearing that Plaintiffs paid $100.00 for the repair diagnosis.

these bald assertions. Plaintiffs also seek injunctive and declaratory relief. However there no longer is– to the extent there was when the case was filed– an order or declaration left for this Court to make. In other words, Plaintiffs' requests for injunctive and declaratory relief are moot.

The doctrine of mootness is a corollary to Article III's "cases" and "controversies" requirement. *DeFunis v. Odegaard*, 416 U.S. 312, 316, 94 S. Ct. 1704, 1705 (1974). The case and controversy required at the commencement of the litigation must continue through "all stages of review." *Genesis Healthcare Corp. v. Symczyk*, – U.S. – , 133 S. Ct. 1523, 1528 (2013) (internal quotation marks and citation omitted). "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Los Angeles Cnty. v. Davis*, 440 U.S. 625, 631, 99 S. Ct. 1379, 1383 (1979) (quoting *Powell v. McCormack*, 395 U.S. 486, 496, 89 S. Ct. 1944, 1951 (1969)).

The Court agrees with New Chrysler that there never was a "live" dispute between the parties as to whether a safety defect exists in the Class Vehicles and whether New Chrysler would repair that defect. Even before Plaintiffs filed this lawsuit, New Chrysler had notified Class Vehicle owners of the airbag module defect "which relates to motor vehicle safety" and promised to repair the defect free of charge. (*See* ECF No. 9-9, Ex. 4.) Plaintiffs also allege in their First

Amended Complaint that New Chrysler has not repaired the defect quickly enough. Yet as of the date of the motion hearing, New Chrysler had notified owners of Jeep Liberty *and* Jeep Grand Cherokee Class Vehicles that New Chrysler was ready to make the necessary repairs and instructed owners to contact their dealer "right away to schedule a service appointment." (*Id.*; ECF No. 28.) As a result, there is nothing left for this Court to order New Chrysler to do with respect to Plaintiffs.[7]

Plaintiffs' counsel nevertheless argued at the motion hearing that Plaintiffs' claims are not moot because it is unclear if the proposed repair will in fact fix the defect in the airbag modules. In support of his argument, counsel cited *In re Toyota Motor Corp. Hybrid Brake, Marketing, Sales, Practices, & Products Liability Litigation*, 890 F. Supp. 2d 1210 (C.D. Cal. Sept. 12, 2011) ("*In re Toyota Hybrid Brake*"), and *Overton v. Bird Brain, Inc.*, No. 11-1054, 2012 WL 909295 (C.D. Cal. Mar. 15, 2012) (unpublished). For the reasons discussed below, both cases are distinguishable from the present matter.

---

[7]At least as of the date of the motion hearing, New Chrysler had not issued similar notices to Model Year 2003-2004 Dodge Viper owners. New Chrysler informs the Court, however, that prototype repair parts have now been received and tested and should be ready for installation in the near future. (*See* ECF No. 9-9 ¶ 29.) In any event, Plaintiffs do not own a Dodge Viper Class Vehicle. Generally a case becomes moot prior to class certification where the named plaintiff's claim(s) become moot. *Gawry v. Countrywide Home Loans, Inc.*, 395 F. App'x 152, 155 (6th Cir. 2010) (citing *Brunet v. Columbus*, 1 F.3d 390, 399 (6th Cir. 1993)).

*In re Toyota Hybrid Brake* was brought by purchasers and lessees of certain Model Year 2010 Toyota Prius or Lexus HS 250h vehicles asserting defects in the anti-lock brake systems. 890 F. Supp. 2d at 1214. Toyota voluntarily recalled the class vehicles, but the plaintiffs asserted in their complaint that the braking defect had not been cured. *Id*. at 1214, 1216. The district court rejected the defendants' contention that the recall mooted the plaintiffs' claims based on this allegation. *Id*. at 1218, 1222.

In the present case, however, Plaintiffs do not allege that a repair has not cured the defect. No facts are alleged or otherwise presented by Plaintiffs to suggest that installation of the repair parts will not cure the airbag module defect. At the motion hearing, Plaintiffs' counsel nevertheless suggested that the Court should not dismiss the lawsuit on mootness grounds until it is at least evident that the repair cures the defect. This could require the Court, however, to keep this litigation open indefinitely waiting for an indication that the repair was not successful.

*Overton* involved "Fireport Fuel Gel," a pourable gel fuel used with firepots and other decorative lighting devices. 2012 WL 909295, at *1. The plaintiff alleged that the fuel gel "burns with an almost invisible flame, such that if a user pours more Fuel Gel into a seemingly empty firepot, the Fuel Gel in the bottle can

-16-

suddenly ignite to result in a 'vapor flash fire.'" *Id*. She alleged that the defendant which manufactured and sold the product was aware of the potential for vapor flash fires and corresponding potential injury but failed to provide proper warnings and misrepresented the product's safety. *Id*. The defendant argued that its voluntary recall of the fuel gel mooted the plaintiff's claims; however, the court determined that the issue could not be decided on a Rule 12(b)(6) motion based on the plaintiff's allegation that the recall was inadequate because it did not cover all class members, did not provide adequate disclosures, and did not provide for a permanent cessation of the sale of fuel gel. *Id*. at 4. Notably, under the terms of the voluntary recall in that case, consumers could obtain a refund by returning only "*unused* fuel gel bottles . . .." *Id.* (emphasis added).

  Again Plaintiffs do not allege here that New Chrysler's repair is inadequate; they only allege that the repair should have been done quicker. No facts suggest that the planned repair will not cure the airbag module defect. Further, unlike *Overton*, the recall extends to all members of the putative class. Finally, nothing suggests that New Chrysler is offering an illusory fix. If the installation of the replacement part remedies the airbag module defect, as New Chrysler anticipates and its testing is claimed to show, Plaintiffs will have received a suitable remedy.

  For all of these reasons, the Court finds that Plaintiffs lack standing and that

their claims against Defendants are moot. The Court therefore is granting New Chrysler's and TRW's motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.

## VI. Conclusion

In short, the Court concludes that it lacks subject matter jurisdiction over Plaintiffs' claims against New Chrysler and TRW. As such, the Court is without authority to rule on the other issues raised in Defendants' motions.

Accordingly,

**IT IS ORDERED**, that Chrysler Group LLC's motion to dismiss [ECF No. 9] and TRW Automotive Holdings Group's Motion to Dismiss [ECF No. 15] are **GRANTED IN PART AND DENIED WITHOUT PREJUDICE IN PART** in that the Court grants the motions to dismiss for lack of subject matter jurisdiction, only;

**IT IS FURTHER ORDERED**, that Chrysler Group LLC's motion to transfer [Ecf No. 11] is **DENIED WITHOUT PREJUDICE**;

**IT IS FURTHER ORDERED**, that Chrysler Group LLC's alternative motion to stay is **DENIED AS WITHOUT PREJUDICE**.

Dated: March 13, 2014				s/PATRICK J. DUGGAN

UNITED STATES DISTRICT JUDGE

Copies to:
Larry J. Saylor, Esq.
Norman C. Ankers, Esq.
Arthur Thomas O'Reilly, Esq.
Patrick E. Cafferty, Esq.